IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


JOAN L.,[1]

                Plaintiff,

    v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

                Defendant.

No. 6:18-cv-00984-HZ

OPINION & ORDER


Merrill Schneider
SCHNEIDER, KERR, & ROBICHAUX
P.O. Box 14490
Portland, OR 97293

    Attorney for Plaintiff

Renata Gowie
Assistant United States Attorney
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for the non-governmental party's immediate family members.

1 - OPINION & ORDER

Heather L. Griffith
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

    Attorneys for Defendant

HERNÁNDEZ, District Judge:

    Plaintiff Joan L. brings this action for judicial review of the Commissioner's final decision denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). This Court has jurisdiction under 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1382(c)(3)). The Commissioner's decision is reversed and remanded for further proceedings.

## PROCEDURAL BACKGROUND

    Plaintiff applied for DIB and SSI on April 17, 2012, alleging disability as of February 14, 2011. Tr. 144.[2] Her applications were denied initially and on reconsideration. *Id.* A hearing was held on October 21, 2014, before an Administrative Law Judge (ALJ). Tr. 82. On December 10, 2014, the ALJ issued an unfavorable decision. Tr. 158–59. The Appeals Council vacated the hearing decision and remanded the case for further consideration by the same ALJ. Tr. 164–67.

    On January 19, 2017, a supplemental hearing was held and Plaintiff appeared with counsel. Tr. 35. On July 12, 2017, the ALJ found Plaintiff not disabled during the relevant period. Tr. 25–26. The Appeals Council denied review of the ALJ's opinion. Tr. 1–6.

## FACTUAL BACKGROUND

    Plaintiff initially alleged disability based on chronic back pain, arthritis, obesity, and fibromyalgia. Tr. 99. She was 59 at the time of her alleged onset date and 65 at the time of the second administrative hearing. Tr. 35, 99. Plaintiff has a high school education and two

---

[2] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record, filed herein as Docket No. 13.

Associate's Degrees with past relevant work as a clerical worker. Tr. 25, 40.

## SEQUENTIAL DISABILITY ANALYSIS

A claimant is disabled if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. *See, e.g., Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. 137 at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

In step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets her burden and proves that the

claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity after her alleged onset date of February 14, 2011. Tr. 19. Next, at step two, the ALJ determined that Plaintiff has the following severe impairments: "low back pain (presumed lumbar spine degenerative disc disease); fibromyalgia; phlebitis; edema of lower extremities; and obesity." Tr. 20. However, at step three, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 22. The ALJ concluded that Plaintiff has the residual functional capacity to perform sedentary work as defined in 20 CFR §§ 404.1567(a) and 416.967(a) with the following limitations:

> [S]he can lift and carry 10 pounds occasionally and frequently. She can sit for six hours in an eight-hour day and stand or walk for two hours each in an eight-hour day, but requires a cane for walking any significant distance outside her home. She can occasionally climb ramps and stairs, but never climb ladders, ropes or scaffolds. She can occasionally stoop, kneel, crouch, and crawl. She must avoid concentrated exposure to unprotected heights due to antalgic gait and the use of a cane.

*Id.* At step four, the ALJ determined that Plaintiff could perform her past relevant work as a clerical worker. Tr. 25. By finding plaintiff was able to do past relevant work, the ALJ determined plaintiff was not disabled; therefore, the ALJ did not proceed to step five. 20 C.F.R. §§ 404.1520(a)(4); 404.1520(f).

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" means "more than a mere scintilla, but less than preponderance." *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v.*

*Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

The court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court may not substitute its judgment for that of the Commissioner. *Id.* (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)); *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Id.*; *see also Batson*, 359 F.3d at 1193. However, the court cannot rely upon reasoning the ALJ did not assert in affirming the ALJ's findings. *Bray*, 554 F.3d at 1225–26 (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).

## DISCUSSION

Plaintiff contends that the ALJ erred by: (1) improperly discrediting Plaintiff's subjective symptom testimony; (2) giving little weight to the opinion of examining licensed psychologist, Gregory Cole, Ph.D.; and (3) improperly assessing the opinion of Derek Leinenbach, M.D., examining physician. Pl. Op. Br. 4–12, ECF 14. Because the ALJ erred in the analysis of Plaintiff's symptom testimony and the medical opinions of Dr. Cole and Dr. Leinenbach, the Court reverses the ALJ's decision and remands this case for further proceedings.

**I.     Subjective Symptom Testimony**

The ALJ is responsible for determining credibility. *See Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). Once a claimant shows an underlying impairment and a causal relationship between the impairment and some level of symptoms, clear and convincing reasons are needed to reject a claimant's testimony if there is no evidence of malingering. *Carmickle v. Comm'r*, 533 F.3d 1155, 1160 (9th Cir. 2008) (absent affirmative evidence that the plaintiff is malingering,

"where the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains, an adverse credibility finding must be based on 'clear and convincing reasons'"); *see also Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (ALJ engages in two-step analysis to determine credibility: First, the ALJ determines whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged"; and second, if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give "specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms.") (internal quotation marks omitted).

When evaluating subjective symptom testimony, an ALJ may properly consider several factors, including a plaintiff's "daily activities, inconsistencies in testimony, [and] effectiveness or adverse side effects of any pain medication[.]" *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). The ALJ may also consider the ability to perform household chores, the lack of any side effects from prescribed medications, and the unexplained absence of treatment for excessive pain. *Id.* Effective March 16, 2016, the Commissioner superseded Social Security Ruling ("SSR") 96-7p, governing the assessment of a claimant's "credibility," and replaced it with SSR 16-3p. *See* SSR 16-3p, *available at* 2016 WL 1119029. SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *Id.* at *1-2.

Here, the ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," and did not identify evidence of malingering. Tr. 23. The ALJ then concluded that the objective evidence did not support Plaintiff's claimed limitations, Plaintiff's testimony was undermined by the conservative treatment of her

impairments, and her daily activities were inconsistent with her reported symptoms. Tr. 23–24.

In the hearing, Plaintiff testified that she was let go from her clerical position because she missed "a considerable amount of work" due to her back problems. Tr. 58–59. Plaintiff also explained that due to her back and hip pain, she could only sit down for one hour at a time before needing to stand up. Tr. 64. She reported that three days per week, her pain flares limit her to the point that she is not able to do much more than watch TV and prepare a can of soup for herself. Tr. 67. She also testified that three to five times per year, her pain becomes so intense that she is bed ridden for up to two weeks and cannot even get up to use the bathroom. Tr. 70.

The Commissioner argues that the ALJ provided four clear and convincing reasons for rejecting Plaintiff's testimony: lack of medical evidence, conservative treatment of her impairments, inconsistency with her daily activities, and inconsistency with the opinions of Plaintiff's treating physicians. Def. Resp. Br. 4–6, ECF 17.

A. Lack of Support from the Objective Medical Evidence

Under certain circumstances, the ALJ can discount a claimant's testimony when that testimony is not supported by the objective medical evidence. *See Batson,* 359 F.3d at 1196 (consulting physician "did not believe that [the plaintiff's] 'graphic and expansive' pain symptoms could be explained on physical basis"); *Burch*, 400 F.3d at 681 (The ALJ could consider mild findings on MRIs and X-rays in discounting the plaintiff's testimony as to her back pain.). However, this may not be the ALJ's sole reason for discounting a claimant's testimony: "the Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence." *Reddick,* 157 F.3d at 722.

The ALJ found that the record did not "support the severity" of Plaintiff's reported symptoms. Tr. 23. The ALJ relied on an examination that revealed plaintiff had decreased range of motion in her back, "mild tenderness over the 18 classic fibromyalgia tender points," and a slow

and hobbling gait, but was able to "perform toe and heel walking." *Id.* Notably, Plaintiff's decreased motion in her back supports her testimony that she had low back pain, as does her slow, hobbling gait and fibromyalgia tender points. Moreover, the ALJ failed to explain how Plaintiff's ability to perform toe and heel walking was inconsistent with her testimony.

The ALJ also relied on evidence that plaintiff had decreased reflexes, decreased sensation in the left foot, normal motor strength, intact sensation, intact muscle tone, and had a positive straight-leg test. Tr. 23. However, normal strength, sensation, and reflexes are not a proper basis for discounting symptom testimony regarding fibromyalgia pain. *See Revels v. Berryhill*, 874 F.3d 648, 656 (9th Cir. 2017) (noting that those suffering from fibromyalgia have "muscle strength, sensory functions, and reflexes that are normal.") (internal citations, quotations, and bracketing omitted). Furthermore, the positive straight-leg test supports plaintiff's reports of lower back pain.

The ALJ next cited examination notes indicating that Plaintiff had decreased range of motion in her back but full range of motion in her neck. Tr. 23. Such is consistent with Plaintiff's reports of back pain and the Court notes that Plaintiff never testified to having neck pain or decreased range of motion in her neck. The ALJ also relied on a report that Plaintiff presented with a mildly slow and antalgic gait, was able to stand on her heels and toes "briefly," and was able to "partially" squat without assistance. *Id.* Plaintiff's problems with her gait support her testimony, as does the fact that she could only *briefly* stand on her heels and toes and only *partially* squat.

The ALJ also cited notes from that appointment showing Plaintiff's strength, sensation, and muscle tone were normal; but, as discussed above, those normal findings are not a proper basis for discounting pain due to fibromyalgia. Tr. 23. Moreover, in the same notes, the doctor observed that plaintiff had swelling in both legs and "required a cane for all distances and types of terrain." *Id.* These observations support Plaintiff's testimony. Therefore, the purported lack of medical evidence is not a clear and convincing reason for discounting Plaintiff's symptom testimony. *See*

*Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (citing *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)) ("The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion.").

B.  Conservative Treatment

The ALJ found that Plaintiff's "treatment has been very conservative, [consisting] largely [of] over-the-counter and prescription medication." 24. However, the ALJ's finding is contradicted by the previous paragraph in which he noted that Plaintiff had "tried multiple treatment modalities including TED hoses, diuretics, anti-inflammatories, steroids, injections, and nerve pain medication, as well as over-the-counter and prescription medication." *Id.* Throughout the course of treatment Plaintiff was taking Savella, Lyrica, prescription strength Ibuprofen, Tramadol, and Hydrocodone to treat her pain. Tr. 414, 444, 484. Considering the myriad forms of treatment that Plaintiff attempted it is not clear what more aggressive forms of treatment the ALJ believed she should have pursued. Accordingly, "[b]ecause the ALJ did not specify what 'more aggressive treatment options [were] appropriate or available,' it would be illogical to discredit Plaintiff 'for failing to pursue non-conservative treatment options where none exist.'" *Cindy F. v. Berryhill*, 367 F.Supp.3d 1195, 1210 (D. Or. 2019) (quoting *Lapeirre-Gutt v. Astrue*, 382 Fed. App'x 662, 664 (9th Cir. 2010)). Therefore, Plaintiff's purported conservative treatment is not a proper basis for discounting her testimony.

C.  Activities of Daily Living

Contradiction with a claimant's activities of daily living is a clear and convincing reason for rejecting a claimant's testimony. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). There are two grounds for using daily activities to form the basis of an adverse credibility determination: (1) when activities meet the threshold for transferable work skills and (2) when activities contradict a claimant's other testimony. *Orn v. Astrue,* 495 F.3d 625, 632 (9th Cir. 2007).

However, "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations," *Reddick*, 157 F.3d at 722, and "the mere fact that a plaintiff has carried on with certain daily activities, such as grocery shopping . . . does not in any way detract from his credibility," *Webb v. Barnhart,* 433 F.3d 683, 688 (9th Cir. 2005) (citing *Vertigan v. Halter,* 26 F.3d 1044, 1050 (9th Cir. 2001)). In order to impact a claimant's credibility, the activity has to be "inconsistent with claimant's claimed limitations." *Reddick,* 157 F.3d at 722. The ALJ cannot mischaracterize statements and documents in the record or take these out of context in order to reach his conclusion on the claimant's credibility. *Id.* at 722–23.

      The ALJ found that Plaintiff's "alleged limitations are not *fully supported* by her reported activities." Tr. 24 (emphasis added). However, Plaintiff's activities do not need to *fully support* her alleged limitations; rather, the ALJ was required to show that Plaintiff's activities contradicted her testimony. *See Orn,* 495 F.3d at 632. Such was not the case. The ALJ found that Plaintiff was able to perform adequate self-care, prepare simple meals, do household chores, and go out to the store. Tr. 24. Although plaintiff reported that she washes dishes daily, sweeps twice per week, vacuums once per week, and does her laundry once per month, she explained that pain interferes with her ability to do those chores. Tr. 465-66. Additionally, while Plaintiff was able to prepare simple meals for herself on a daily basis, it is not clear how that is inconsistent with her testimony. Tr. 466. Plaintiff also reported that she was able to go shopping twice per month, but while shopping she often had to stop and rest. Tr. 466, 485. Minimal activities such as these are not inconsistent with a valid disability claim. *Reddick*, 157 F.3d at 722 (claimants should not be penalized for attempting to lead normal lives in the face of their limitations); *Molina*, 674 F.3d at 1112–13 (The "claimant need not vegetate in a dark room to be eligible for benefits.") (citation omitted).

      The ALJ also cited the fact that Plaintiff stretches and goes swimming six days per week.

Tr. 24. However, Plaintiff was directed to stretch and swim as part of her treatment. Tr. 411. Indeed, the record reflects Plaintiff was instructed that rather than physical therapy, swimming "would be her best therapy." *Id.* Therefore, the ALJ erred in relying on Plaintiff's ability to perform exercises recommended as part of her treatment. *See Vertigan*, 260 F.3d at 1050 (the fact that a claimant can perform therapeutic exercises is not evidence that she is able to perform or sustain such activity in a work setting). Therefore, Plaintiff's activities do not qualify as a clear and convincing reason for discounting her testimony.

        D.        Inconsistent with Opinions of Treating Physicians

The Commissioner argues that the "ALJ discounted Plaintiff's symptom reports because Plaintiff's physicians largely did not opine that she was more limited than the ALJ found." Def.'s Resp. Br. 6, ECF 17. Contrary to the Commissioner's assertion, the ALJ did not rely on such a rationale in his decision. Thus, the Commissioner's contention is *post hoc*, which the Court may not consider in affirming an adverse decision. *Bray*, 554 F.3d at 1225 ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking."). Furthermore, the Commissioner's argument also fails because it is vague and fails to identify which testimony was inconsistent with the opinions of her physicians. *Smolen*, 80 F.3d at 1284 (citing *Dodrill*, 12 F.3d at 918). Accordingly, the ALJ erred in discounting Plaintiff's subjective symptom testimony.

## II.    Medical Opinion Evidence

Plaintiff argues that the ALJ erred in assessing the opinions of Gregory Cole, Ph.D., and Derek Leinenbach, M.D., examining medical sources. If no conflict arises between medical source opinions, the ALJ generally must accord greater weight to the opinion of an examining physician over that of a reviewing physician. *Lester v. Chater,* 81 F.3d 821, 830 (9th Cir. 1995). If a treating

or examining physician's opinion is not contradicted by another physician, the ALJ may reject it only for clear and convincing reasons. *Id.*; *Widmark v. Barnhart*, 454 F.3d 1063, 1067 (9th Cir. 2006). Even if one physician is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. *Orn,* 495 F.3d at 632; *Widmark*, 454 F.3d at 1066. However, the ALJ may reject physician opinions that are "brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

    A.    Dr. Cole

The ALJ gave significant weight to the opinion of Dr. Cole, except for Dr. Cole's conclusion that Plaintiff was markedly limited in her ability to respond appropriately to usual work situations and changes in a routine work setting. Tr. 21. The ALJ assigned little weight to the marked limitation, finding that Dr. Cole "explained in his narrative that he was speculating about the effects of pain" when he noted the marked limitation. Tr. 21. The ALJ, however, misconstrues Dr. Cole's opinion. In performing his psychodiagnostic evaluation, Dr. Cole observed that "it is presumed that her: problems managing pain would be the primary factors, which would impact her overall level of vocational success. In this area, further medical evaluation is suggested to determine the client's specific physical limitations." Tr. 466. Thus, it is clear that to the extent Dr. Cole was speculating, he was speculating about Plaintiff's *physical limitations*. However, the limitation in Plaintiff's ability to respond appropriately to usual work situations and changes in a routine work setting is not a physical limitation.

The ALJ also found that "Dr. Cole acknowledged that he is not qualified to comment about Plaintiff's medical impairments and the resulting impact of those impairments." Tr. 21. As explained above, Dr. Cole was not qualified to comment on the *physical* limitations resulting from Plaintiff's medical impairments. Dr. Cole was, however, qualified to opine as to the

*psychological* impact of Plaintiff's medical impairments. Indeed, as a psychologist this fell well within his area of expertise. Notably, Dr. Cole diagnosed Plaintiff with somatic symptom disorder, Tr. 466, which "'involves having a significant focus on physical symptoms—such as pain or fatigue—to the point that it causes major emotional distress and problems functioning.'" *Defrees v. Colvin*, No. CV-15-00339-PHX-DGC, 2015 WL 5675282, at *2 n.1 (D. Ariz. Sep. 28, 2015) (citing Mayo Clinic, http://www. mayoclinic.org/diseases-conditions/somatic-symptom-disorder/basics/definition/con-20124065 (last visited September 25, 2015)).[3] Moreover, the Listings note that symptoms and signs of somatic symptom disorder may include "a high level of anxiety about personal health status." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00.B.6.a. Thus, Dr. Cole's diagnosis of somatic symptom disorder supports his conclusion that the psychological impact of Plaintiff's medical conditions would interfere with her ability to work.

The ALJ also noted that he assigned greater weight to the medical opinion of Dr. Leinenbach. Nevertheless, Dr. Leinenbach did not offer an opinion on the psychological impact of Plaintiff's physical impairments, and was not in fact, qualified to do so. Accordingly, Dr. Leinenbach's opinion does not undermine Dr. Cole's opinion.

In sum, the ALJ failed to provide specific, legitimate reasons for discounting Dr. Cole's opinion.

B.  Dr. Leinenbach

The ALJ did not specify what weight he gave to Dr. Leinenbach's opinion and the ALJ did not provide any reasons for rejecting any of the limitations assessed by Dr. Leinenbach. Tr. 21. At issue is Dr. Leinenbach's assessment that Plaintiff could only sit for one hour at a time, which the

---

[3] As of July 30, 2019, the Mayo Clinic website described somatic symptom disorder as "characterized by an extreme focus on physical symptoms—such as pain or fatigue—that causes major emotional distress and problems functioning." *See* Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/somatic-symptom-disorder/symptoms-causes/syc-20377776 (last visited July 30, 2019). This description is substantively the same as the description relied on in *Defrees* in 2015.

13 - OPINION & ORDER

ALJ did not include in the RFC. *See* Tr. 22, 448. The Commissioner concedes that the ALJ erred in failing to include that limitation in the RFC. Def.'s Resp. Br. 10, ECF 17. However, the Commissioner argues that such error was harmless because the VE in the second hearing (VE #2) testified that if Plaintiff were limited to sitting one hour or even 45 minutes at a time, Plaintiff could perform her past relevant work. Tr. 77-78. However, the VE from the first hearing (VE #1) testified that if Plaintiff were limited to sitting 45 minutes at a time, she could not perform her past relevant work. Tr. 91-92.

Plaintiff argues that the ALJ relied on the testimony of VE #1, because, in his decision, the ALJ found that Plaintiff could perform the job of clerical worker, DOT # 209.562-010 and that was the job discussed by VE #1. *See* Tr. 25, 88. On the other hand, VE #2 discussed the job of receptionist, DOT # 237.367-038.[4] Tr. 75. The Commissioner argues that the ALJ properly relied on the testimony of VE #2 because the ALJ found that Plaintiff could perform her past relevant work "as actually performed." Def.'s Resp. Br. 11, ECF 17. However, the record does not reflect that her past work as actually performed allowed her to stand up every hour. Moreover, VE #1 specifically stated that needing to stand up every 45 minutes would rule out receptionist positions because: "It's hard to get up and down if you're the receptionist and doing database entry work." Tr. 92. Notably, VE #2 characterized plaintiff's past work as "receptionist essentially" and concluded that Plaintiff could perform her past work as a receptionist, DOT # 237.367-038. Tr. 74–75.

The Commissioner argues that ALJ properly relied on VE #2 and the ALJ's citation to the clerical worker job discussed by VE #1 was "scrivener's error." Def.'s Br. 10, ECF 17. The

---

[4] While VE #2 initially classified some of Plaintiff's past work for the employment department as employment clerk, DOT # 205.362-014, upon further testimony from Plaintiff, VE #2 determined that work was essentially a receptionist position within the employment department. Tr. 72–75. Therefore, VE #2 ultimately concluded that all of Plaintiff's past work was categorized under the receptionist job title. *Id.*

14 - OPINION & ORDER

Commissioner cites some contextual evidence that could support that interpretation, but ultimately it is speculative and the Court finds it unpersuasive. *See id.* at 11 (noting that the ALJ cited the resume of VE #2). Furthermore, even if the Court were to accept the Commissioner's argument that the ALJ was relying on the testimony of VE #2, there still appears to be a conflict between the testimony of the two VEs. Namely, VE #1 testified that it is "hard to get up and down" in receptionist work and that if Plaintiff had to stand up every 45 minutes she would not be able to perform her past work.[5] Tr. 91–92. Accordingly, there is enough ambiguity on this point to merit revisiting it on remand, particularly considering that a remand is already required based on the ALJ's additional harmful errors.

### III.  Remand for Further Proceedings

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the Court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). To determine which type of remand is appropriate, the Ninth Circuit uses a three-part test. *Id.* at 1020; *see also Treichler v. Comm'r*, 775 F.3d 1090, 1100 (2014) ("credit-as-true" rule has three steps). First, the ALJ must fail to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). Second, the record must be fully developed, and further administrative proceedings would serve no useful purpose. *Id.* Third, if the case is remanded and the improperly discredited evidence is credited as true, the ALJ would be required to find the claimant disabled. *Id.* To remand for an award of benefits, each part must be satisfied. *Id.*; *see also Treichler*, 775 F.3d at 1101 (When all three elements are met, "a case raises the 'rare circumstances' that allow us to exercise our discretion to depart from the ordinary remand rule."). The "ordinary remand rule" is the proper

---

[5] While VE #1 was never asked whether Plaintiff would be able to perform her past work if she had to stand up every hour, his testimony strongly indicated that such a limitation would preclude Plaintiff's past work. *See* Tr. 91–92.

course except in rare circumstances. *Treichler*, 775 F.3d at 1101.

In this case, remanding for further proceedings is appropriate. First, the Court has already explained above that the ALJ has failed to provide legally sufficient reasons for rejecting Plaintiff's testimony, and erroneously assessed the medical opinions of Dr. Cole and Dr. Leinenbach. However, the second requisite is not met, as the record in this case is not fully developed. Even if the improperly discounted testimony of Plaintiff and the improperly discredited opinions of Dr. Cole and Dr. Leinenbach were credited as true, the VE did not provide an opinion regarding all the limitations Plaintiff wishes the Court to credit. Additionally, the ALJ has not addressed the apparent conflict between the testimony of the two VEs. Crediting the improperly discredited evidence requires re-formulation of the RFC and corresponding question to the VE. Therefore, the record is still not fully developed and it is not clear that Plaintiff is, in fact, disabled. Remand for further proceedings is the appropriate remedy. *Treichler*, 775 F3d at 1105. ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

## CONCLUSION

Based on the foregoing, the Commissioner's decision is REVERSED and REMANDED for further proceedings.

IT IS SO ORDERED.

Dated this 31 day of August, 2019.

MARCO A. HERNÁNDEZ
United States District Judge